UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bellington Realty and | ) | |
| Eighteen Investments, Inc., | ) | |
| | ) | No. 10 C 7224 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Philadelphia Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bellington Realty ("Bellington") brought this diversity action against its insurer, Philadelphia Insurance Company ("Philadelphia"), alleging claims for breach of contract and relief under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.[1] Presently before the Court are the parties' cross-motions for summary judgment. R. 16, 21. For the reasons explained below, Bellington's motion for partial summary judgment on Philadelphia's first affirmative defense is granted, and Philadelphia's motion for summary judgment is denied.

**Background**

Philadelphia issued a commercial lines insurance policy to Bellington. R. 25, Def.'s Resp. to Pls.' Stmt. of Facts ("Def.'s Resp. PSOF") ¶ 3. The policy was effective August 2009 through August 2010 and included coverage for commercial property, commercial general liability, commercial crime, and commercial auto. *Id.* ¶¶ 3, 4. The policy insured property at over 750 locations around the country, including an

---

[1] Bellington has since amended its complaint to add Eighteen Investments, Inc. as an additional plaintiff. R. 50.

1

apartment building located at 7937 South Marquette Avenue in Chicago, Illinois. *Id.* ¶¶ 1, 6. The commercial property coverage portion of the policy insured 7937 South Marquette against risks of direct physical loss or damage unless limited or excluded. *Id.* ¶ 7. This type of policy is commonly referred to as an "all-risk" policy. *See* R. 19-1, Pls.' Br. at 4.

In December 2009, there was a fire at 7937 South Marquette. Def.'s Resp. PSOF ¶ 23. Bellington notified Philadelphia of the loss and submitted a claim for coverage. *Id.* ¶ 24. Philadelphia began investigating the claim. In March 2010, Philadelphia sent Bellington a letter requesting additional documents and information relating to the 7937 South Marquette apartment building. R. 18-14, Pls.' Exh. N. Philadelphia's letter described Bellington's claim as "vandalism/arson damage." Def.'s Resp. PSOF ¶ 36. In May 2010, Philadelphia issued a letter to Bellington denying the claim. *Id.* ¶ 37. Philadelphia's denial was based on its determination that 7937 South Marquette had been vacant for more than 60 consecutive days before the fire and that the fire was an act of vandalism. *Id.* As a result, Philadelphia denied the claim based on the policy's exclusion for loss or damage to vacant property caused by vandalism. *Id.*

In this lawsuit, Bellington and Eighteen Investments contend that Philadelphia must pay for all of the losses and damages sustained by them as a result of the fire at 7937 South Marquette. R. 53, Am. Compl. ¶ 10. Philadelphia denies that it has a duty to pay Plaintiffs' claim, and asserts three affirmative defenses. *See* R. 54, Am. Answer. Philadelphia's first affirmative defense is based on

2

the policy's so-called "vacancy exception." Specifically, the vacancy exception provides that if a loss is caused by "vandalism," Philadelphia will *not* pay for the loss if the building was vacant for more than 60 consecutive days before the loss occurred. But if the loss is caused by one of the other "covered causes of loss" under the policy, Philadelphia *will* pay for a loss sustained in a vacant building, however, the amount Philadelphia would otherwise pay for the loss will be reduced by 15%.

Bellington moves for partial summary judgment on Philadelphia's first affirmative defense. Bellington argues that, as a matter of law, the "vandalism exclusion" does *not* apply in this case. Bellington contends that even if the fire was intentionally and/or maliciously set and thus may qualify as an act of "arson," the policy does not specifically exclude coverage for arson. Bellington argues that arson is a type of fire, as contrasted to a type of vandalism, and that Philadelphia's defense that the vacancy exclusion precludes coverage for fires caused by arson fails. Bellington asserts that, at a minimum, the term "vandalism" is susceptible to more than one reasonable interpretation and, therefore, it is ambiguous as to whether the vacancy exception encompasses an arson fire.

Philadelphia's cross-motion for summary judgment addresses the same issue: whether arson constitutes "vandalism" under the vacancy exception. Philadelphia contends that the vacancy exception is *not* ambiguous. Rather, looking at the plain, ordinary, and popular meaning of the term "vandalism" demonstrates that arson is a type of vandalism. As a result, Philadelphia asserts that the Court should find

3

that arson constitutes vandalism under the vacancy exception and grant partial summary judgment in favor of Philadelphia.

After reviewing the policy and the case law cited by the parties, the Court agrees with Bellington that, at a minimum, it is ambiguous whether the term "vandalism" includes arson. Accordingly, Philadelphia cannot preclude coverage based on its position that the December 2009 loss was caused by vandalism.

## Analysis

At issue in this case is the interpretation of the parties' agreement, namely, the "all-risk" property insurance policy Philadelphia issued to Plaintiffs. "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The rules of contract interpretation are well settled. Under Illinois law, which applies in this diversity action, the "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*

In *Outboard Marine Corporation v. Liberty Mutual Insurance Company*, 607 N.E.2d 1204, 1212 (Ill. 1992), the Illinois Supreme Court set forth the general principles for construing insurance policies. Specifically,

> The construction of an insurance policy's provisions is a question of law. In construing an insurance policy, the court must ascertain the intent of the parties to the contract. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. If the words of the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. However, if the words in the policy are susceptible to more than one reasonable

4

interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.

*Id.* (citations and emphasis omitted).

Here, Plaintiffs' insurance policy states that—as a general matter—fire and vandalism are covered by the policy, unless an exclusion or some other condition applies. The policy does not make any reference to arson. Specifically, the policy includes a "Building and Personal Property Coverage Form," which provides that Philadelphia "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." R. 18-4, Pls.' Exh. D at 1. The "Covered Causes of Loss" provision, in turn, directs the reader to "[s]ee applicable Causes of Loss Form as shown in the Declarations." Pls.' Exh. D at 3. The "Causes of Loss – Special Form" is submitted as Plaintiffs' Exhibit E. This Form defines "Specified Causes of Loss" as "**[f]ire**; lightening; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; **vandalism**; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." R. 18-5, Pls.' Exh. E at 9 (emphases added). In this provision, and throughout the policy, fire and vandalism are listed as separate and distinct perils or causes of loss.

In other words, if vandalism or fire occurred at a non-vacant building, Philadelphia would pay for the loss assuming that no other exclusions applied. If the building is vacant for 60 consecutive days before the loss occurs, however, the vacancy exclusion bars coverage for losses caused by vandalism. Alternatively, if *fire* was the cause of loss, the building is covered regardless of whether it was vacant or

5

not (again, assuming that no other exclusions apply). If the building is vacant for 60 consecutive days, the vacancy exclusion provides that Plaintiffs' recovery for a loss caused by fire must be reduced by 15% of the amount Philadelphia would otherwise pay for the loss. In considering the parties' cross-motions for summary judgment, the Court assumes that 7937 South Marquette was vacant for 60 consecutive days prior to the loss.[2] Thus, the only issue the Court must decide relates solely to the second prong of the vacancy exclusion: whether "vandalism" caused the loss.

With the principles for construing insurance policies in mind, the Court must consider whether the term "vandalism" includes arson. The policy does not define the terms "vandalism," "fire," or "arson"—indeed, arson is not mentioned in the policy at all. The Court recognizes that just because "a term is not defined by the policy does not render it ambiguous." *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs.*, 860 N.E.2d 280, 286 (Ill. 2006). "Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Id.* "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010).

Here, Philadelphia points to the dictionary definition of "vandalism"—"the deliberately mischievous or malicious destruction or damage of property"—and argues that "arson" is a type of "vandalism" because arson is defined as "the

---

[2] Plaintiffs contend that genuine issues of material fact exist as to whether the fire at 7937 South Marquette was an act of arson and whether the building was vacant for 60 consecutive days prior to the fire. *See* Pls.' Br. at 2. Plaintiffs' motion for partial summary judgment is thus based solely on the ambiguity of the policy as to whether "vandalism," as that term is used in the vacancy exclusion, includes an arson fire. *Id.*

6

malicious burning of another's house or property." Def.'s Stmt. of Facts ¶¶ 9, 10. But even if these definitions are considered in light of the entire policy, the ambiguity regarding whether arson is a form of vandalism remains unresolved. The Court agrees with Plaintiffs' position that the policy is ambiguous as to which peril covers arson—fire or vandalism.

For example, the policy lists "fire," "smoke," and "vandalism," among other things, as separate causes of loss. This indicates that "fire" and "vandalism" should have independent meaning. Philadelphia fails to show that arson may *only* be reasonably equated with "vandalism" under the policy. Rather, the term vandalism may also be reasonably interpreted as *not* including acts of arson. And, likewise, the term "fire" could reasonably encompass acts of arson. The policy in this case is similar to the policy at issue in *R & J Development Co. v. Travelers Property Casualty*, 2012 WL 1598088 (D. Ky. May 7, 2012). In *R & J Development*, the court concluded that the insurer failed to show that the term "vandalism" unambiguously includes intentionally set fires, or "arson." The Court finds the analysis set forth in *R & J Development* persuasive, and concludes that, at a minimum, it is unclear whether vandalism necessarily includes acts of arson.

Having decided that the term "vandalism" is ambiguous, the Court must now determine whether the insurance policy provides coverage for arson fires. Illinois law provides that "[w]here ambiguity does exist, the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured." *Nicor*, 860 N.E.2d at 286 (citations omitted). Applying this principle to the

instant case, the Court concludes that arson (which is undefined and not mentioned at all in the policy) should fall under the umbrella of "fire" (as opposed to "vandalism") and thus qualifies as a covered loss under the policy.

However, it is too early to determine whether Philadelphia must actually cover Plaintiffs' loss in this case. The parties appear to agree that such a ruling would be premature at this stage because other issues of material fact exist, and more discovery is needed to completely resolve the coverage dispute. For instance, Philadelphia's second affirmative defense contends that Plaintiffs are barred from recovering under the policy due to their failure to produce documents relating to the claim and otherwise satisfy conditions of the policy. The Court's ruling today is limited to granting Plaintiffs' motion for partial summary judgment on Philadelphia's first affirmative defense.

## Conclusion

For the reasons stated above, Plaintiffs' motion for partial summary judgment on Philadelphia's first affirmative defense [R. 16] is granted. Philadelphia's motion for summary judgment [R. 21] is denied. The Court will schedule a status hearing so that the parties can report on the status of discovery and whether they would like the case to be referred to the magistrate judge for a settlement conference.

                                                                                       ENTERED:

*[Signature: Thomas M Durkin]*

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 31, 2013